UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BEHROUZ SAADAT-MOGHADDAM,

               Plaintiff,

   v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

               Defendant.

Case No. 3:14-cv-5267-KLS

ORDER AFFIRMING DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On April 27, 2011, plaintiff filed an application for disability insurance benefits, alleging he became disabled beginning August 1, 2004, due to angina and heart stents. <u>See</u> ECF #8,

ORDER - 1

Administrative Record ("AR") 12, 144-52, 174, 178. The application was denied upon initial administrative review on June 8, 2011, and on reconsideration on August 12, 2011. See AR 12. A hearing was held before an administrative law judge ("ALJ") on October 4, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 35-67.

In a decision dated October 22, 2012, the ALJ determined plaintiff to be not disabled. See AR 12-20. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 24, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 2-6; 20 C.F.R. § 404.981, § 416.1481. On March 31, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1. The administrative record was filed with the Court on June 5, 2014. See ECF #8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further proceedings, because the ALJ erred: (1) in failing to fully and fairly develop the record and provide plaintiff with a full and fair hearing; (2) in failing to properly evaluate plaintiff's testimony; (3) in failing to properly evaluate the medical evidence; (4) in assessing plaintiff's residual functional capacity ("RFC"); (5) in failing to base her step four finding on an RFC that included all of plaintiff's limitations; and (6) in failing to find plaintiff disabled under Medical-Vocational Rule 201.14. For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds defendant's decision to deny benefits should be affirmed.

ORDER - 2

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must

ORDER - 3

I.      Plaintiff's Hearing and the Development of the Record

      1. The ALJ's Duty to Fully and Fairly Develop the Record

An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). In Tonepetyan, the Ninth Circuit stated that the duty to fully and fairly develop the record may be discharged "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, *or* keeping the record open after the hearing to allow supplementation of the record." 242 F.3d at 1150 (emphasis added) (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir.1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir.1996)). Plaintiff argues that he was harmed by the failure to keep the record open because "it is unclear from this record what the missing evidence is or whether it was ever submitted and exhibited." ECF #14, p. 2.

While the ALJ first told plaintiff and his counsel that she would not provide counsel with additional time to submit medical records, the ALJ agreed to consider any evidence submitted before her decision was made and provided plaintiff with an opportunity to continue the hearing so that additional records could be provided. AR. 38-39, 41. Counsel for plaintiff requested to proceed with, rather than continue, the hearing. AR. 41. Further, plaintiff has failed to cite to any missing evidence that should have been included in the record, and did not allege that the ALJ failed to reference any medical records contained in the record currently before the Court. The evidence shows that the record is complete and that the ALJ did not fail to fully and fairly develop the record.

---

      scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

2. Plaintiff's Due Process Rights at the ALJ Hearing

To succeed on a due process claim, the claimant must show that "the ALJ's behavior, in the context of the whole case, was so 'extreme as to display clear inability to render fair judgment.'" Bayliss v. Barnhart, 427 F.3d 1211, 1215 (9th Cir. 2005) (quoting Rollins v. Massanari, 261 F.3d 853, 858 (9th Cir. 2001). The Court must begin with a presumption that the ALJ was unbiased. Id. The claimant can rebut the presumption by showing a "conflict of interest or some other specific reason for disqualification." Id. (quoting Rollins, 261 F.3d at 858). Further, the claimant must show that, even in the event of a due process violation, the violation prejudiced his case. Ludwig v. Astrue, 681 F.3d 1047, 1055 (9th Cir. 2012).

Plaintiff maintains that his due process rights were violated at the ALJ hearing because the ALJ provided plaintiff with notice that a medical expert would be testifying, but no medical expert testified. ECF #12. Social Security Ruling 83-20 requires the ALJ to obtain the testimony of a medical expert when the disability onset date is unclear. Armstrong v. Commissioner of Social Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998). The ALJ's decision on whether a medical expert is necessary is inherently discretionary. 20 C.F.R. §§ 404.1527(f)(2)(iii); Kruchek v. Barnhart, 125 F. App'x 825, 827 (9th Cir. 2005) (unpublished opinion).

The ALJ sent notice to plaintiff that a medical expert would be present, but at the hearing stated that the doctor would not be testifying due to a "miscommunication". AR. 39. The ALJ explained that she looked at the file more carefully, and decided that there was no need for a medical expert with the record as it stood. AR. 39-40. Further, as the ALJ found plaintiff to be not disabled, the disability onset date was not unclear and the testimony from a medical expert was not necessary. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) ("Because the ALJ found that [the claimant] could have returned to his prior work and was not disabled, the judge

ORDER - 5

needed no medical expert to determine the onset date of the alleged disability.").

Plaintiff also argues that he did not receive a full hearing because the ALJ made comments indicating that the hearing was rushed and plaintiff's attorney did not have adequate time to question the vocational expert. ECF #12. The ALJ made comments indicating there were time limitations on the hearing. AR. 53, 58, 63, 65-66. However, the ALJ allowed plaintiff's counsel to make an opening statement, plaintiff's counsel questioned plaintiff and the vocational expert, and the ALJ offered plaintiff's counsel an opportunity to make a closing statement, which counsel declined. AR. 42, 53-58, 65-67. Plaintiff was given a full hour, the allotted time, for the hearing. AR. 66. Additionally, when plaintiff's counsel stated that plaintiff had not had a full hearing, the ALJ provided counsel with an opportunity to ask an additional question of the vocational expert. AR. 66. Counsel for plaintiff stated that he had no further questions. AR. 66. After a review of the record as a whole, ALJ's behavior was not so "extreme as to display clear inability to render fair judgment." See Bayliss, 427 F.3d at 1215. Accordingly, plaintiff's due process rights were not violated.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>see</u> <u>also</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen</u>, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>See</u> <u>id.</u>

The ALJ determined that plaintiff lacked credibility because (1) the medical records revealed that plaintiff's symptoms were disproportionate to the objective and clinical findings; (2) plaintiff has received essentially routine and/or conservative treatment; (3) plaintiff stopped working for reasons unrelated to his allegedly disabling impairments; and (4) plaintiff's activities of daily living were not limited to the extent one would expect given the complaints of limitations. AR. 17-19. The ALJ outlined the medical evidence and other evidence contained in the record to support her findings. AR. 17-19. Plaintiff maintains that the ALJ failed to provide legally sufficient reasons for discounting plaintiff's testimony that his stress does not allow him to return to his past work. ECF #12.

The ALJ first found the medical records did not support plaintiff's allegations regarding the severity of his alleged disabling impairments. AR. 17. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998). The

ORDER - 7

medical evidence fails to show plaintiff received treatment for anxiety or stress. The ALJ found that plaintiff's mental impairment of anxiety did not cause more than minimal limitations, and was therefore nonsevere. AR. 15. Plaintiff does not contest these findings. As there is no impairment of anxiety that could reasonably be expected to produce the alleged stress, the ALJ could properly rely on this determination to discount plaintiff's credibility.

The medical evidence also shows Plaintiff was seen by his treating physician, Dr. George Supplitt, M.D., in January of 2005 because plaintiff was concerned he was having anxiety attacks. AR. 215. Plaintiff reported intermittent chest tightness. AR. 215. Dr. Supplitt gave plaintiff a differential diagnosis of angina versus panic attacks and anxiety, and noted that plaintiff "just does not have a story that fits really well with anxiety[.]" AR. 216. Two stents were placed in plaintiff's heart in January of 2005. *See* AR. 307-08.

Approximately one month after the stents were deployed, plaintiff had a normal exercise nuclear stress test, and was "entirely asymptomatic." AR. 226, 290. Plaintiff reported that he was walking, and reported no significant problems, such as chest pain. AR. 226. In May of 2005, plaintiff reported chest discomfort, which was different from the previous angina-related discomfort. AR. 229. Plaintiff had a "[f]airly benign appearing EKG", and plaintiff's doctor elected to watch plaintiff, rather than perform additional testing or treat the new symptoms. AR. 229. Plaintiff returned two months later feeling very good with no reports of further chest pains. AR. 232-33. Throughout the next several years, plaintiff reported no significant problems related to his chest pain. See AR. 235-36, 244, 265, 277.

A stress test was performed in May of 2010. AR. 265-69. Plaintiff had a normal EKG. AR. 267. The stress test, however, was abnormal, and there was evidence of exercise-induced myocardial ischemia in the mild inferior area. AR. 268-69. Plaintiff was not being treated with

ORDER - 8

medical therapy, and the physician recommend plaintiff start taking aspirin, simvastatin, and a beta blocker. AR. 269. Plaintiff performed very well on a stress test in June of 2010, and was asymptomatic. AR. 277. The objective medical records and clinical findings undermine plaintiff's complaints of disabling symptoms.

The ALJ next found that plaintiff received relatively routine and conservative treatment. AR. 18. Where the "record reflects that [plaintiff] responded favorably to conservative treatment," yet failed to seek aggressive treatment, such findings allow the ALJ to make the "permissible inference" that the plaintiff's symptoms were "not as all-disabling as he reported." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008); SSR 96-7p 1996 SSR LEXIS 4, at *21-*22 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. . . . and there are no good reasons for this failure"). The records show Plaintiff continually reported being asymptomatic following his stenting. AR. 226, 229, 235, 277. Plaintiff had not had to use nitroglycerin to manage his symptoms, and tolerated his medications well. AR. 277. The ALJ also noted that plaintiff had no periods of hospitalization for cardiovascular impairments following his stent placement. AR. 18. This finding is supported by the record. The record reflects that plaintiff responded well to the stenting and received conservative and routine treatment following the procedure. Further, plaintiff continually reported that he was asymptomatic and did not present problems that required additional treatment. Plaintiff's conservative treatment undermines his complaints of disabling impairments.

In addition, the ALJ found plaintiff's complaints were not as severe as alleged because the plaintiff stopped working for reasons other than his alleged disabling impairments. AR. 18. An ALJ's finding that plaintiff did not stop working because of his alleged disabling

ORDER - 9

impairments is a legitimate reason for discounting his credibility. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to the fact that he left his job for reasons other than his alleged impairment). Plaintiff, however, was laid-off three years prior to his alleged onset date. AR. 178. The evidence shows that plaintiff's conditions worsened after he was laid-off, as he had two stents put in his heart in 2005. The record does not support the inference that plaintiff sought disability benefits because he was laid-off. Thus, plaintiff's reason for leaving his job is not a proper basis for rejecting his credibility.

Last, the ALJ determined that plaintiff's activities of daily living suggest a higher level of functioning than that alleged by plaintiff. AR. 18-19. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." Id. Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012). Under the second ground in Orn, a claimant's activities of daily living can "contradict his other testimony." 495 F.3d at 639.

During the ALJ hearing, plaintiff testified that he prepares meals for his family, works on his house and his rental properties, manages the finances, helps his children with homework, exercises, meditates, fixes the cars when needed, researches diabetes, and is involved in charity work. AR. 51-53. Plaintiff educates the public through the Internet regarding other cultures and world affairs. AR. 51. Plaintiff also testified that he attends political groups during elections, and

ORDER - 10

he assists the elderly by "taking them around" and taking care of their needs. AR. 51. In his Function Report, plaintiff stated that he spends one to two hours daily cooking meals for his family, he does yard work three times a week, goes shopping for one to two hours every two weeks, and he handles stress fairly well. AR. 185-90. Plaintiff also reported to his doctors that he had no problems keeping up with remodeling and repairing a rental home, and he was traveling, exercising, and doing a fair amount of yard work. AR. 229, 243, 251, 274. The ALJ's finding that plaintiff's activities of daily living undermine his complaints of disabling impairments is proper.

The fact that one of the reasons for discounting plaintiff's credibility (leaving work for reasons other than his disabling impairments) was improper does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record. Tonapetyan, 242 F.3d at 1148. The ALJ's findings that plaintiff lacked credibility due to a lack of corroborating objective medical evidence, plaintiff's conservative and/or routine treatment, and plaintiff's activities of daily living are supported by substantial evidence, and thus the ALJ's credibility determination is valid.

Plaintiff also argues that the ALJ's decision incorrectly states that plaintiff believes he is incapable of all work activity. ECF #12, p. 9. Plaintiff maintains that he stated only that he is unable to do his previous job due to stress. Plaintiff filed an application for disability benefits, and plaintiff testified that he could not return to his previous job and did not know if he could perform a job that involved less stress. *See* AR. 58, 144-52. The ALJ's inference that plaintiff believes he is incapable of all work activity is supported by substantial evidence. Furthermore, the ALJ's statement is inconsequential as the ALJ properly discredited plaintiff's testimony and determined plaintiff could return to his past work.

III. <u>The ALJ's Assessment of the Medical Evidence</u>

Plaintiff maintains that the ALJ erred by failing to acknowledge that plaintiff's medical conditions could provide an objective basis for plaintiff's limitations. ECF #12. The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR. 17. Plaintiff cites no medical evidence that opines plaintiff has the limitations alleged. *See* ECF #12. The ALJ determined the medical evidence could provide the basis for plaintiff's limitations, but properly found plaintiff lacked credibility and was not disabled. Thus, the ALJ did not err in her assessment of the medical evidence.

Plaintiff also argues that the ALJ erred by giving "great weight" to state agency medical consultant Norman Staley, M.D., because Dr. Staley did not consider plaintiff's testimony when making his determination. ECF ##12, 14.  Dr. Staley's opinion was completed more than a year before plaintiff testified to allegedly disabling impairments at the ALJ hearing, and plaintiff cites to no additional evidence showing plaintiff's complaints of disabling limitations. <u>See</u> AR. 35, 83. As such, Dr. Staley could not consider plaintiff's testimony of disabling impairments in his opinion.  In addition, as determined above, the ALJ did not err in her credibility determination in regard to plaintiff's testimony, and thus plaintiff's testimony did not need to be considered during the ALJ's assessment of Dr. Staley's opinion.

IV. <u>The ALJ's Residual Functional Capacity Assessment and Step Four Analysis</u>

Plaintiff next contends that because the ALJ erred in her evaluation of plaintiff's credibility, the ALJ erred in her assessment of plaintiff's residual functional capacity ("RFC")

ORDER - 12

and in her step four analysis. ECF #12. Specifically, plaintiff contends that, if proper weight had been given to his testimony regarding his limitations, the ALJ would have incorporated additional limitations (plaintiff's "need to manage and schedule tasks so that he can perform them at his own pace in order to limit his exposure to stress") into her RFC assessment and into the hypothetical questions posed to the vocational expert. Id. at p. 15-17. As the ALJ properly discredited plaintiff's complaints of disabling limitations, see supra II, plaintiff's arguments fail. The RFC assessment and the hypothetical questions were properly based on the credible evidence contained in the record, and thus both the ALJ's RFC assessment and the hypothetical questions posed to the vocational expert were proper. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (an ALJ's RFC assessment need only to incorporate credible limitations that are supported by substantial evidence in the record); Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence").

V.    Disability Determination Under Medical-Vocational Rule 201.14

Last, plaintiff contends that the ALJ was required to find plaintiff disabled under the framework of Medical-Vocational Rule 201.14. ECF #12. Plaintiff alleges he is limited to sedentary exertion, and is therefore precluded from performing his past relevant work. Id. Further, plaintiff states that he cannot perform any other work due to his stress intolerance. Id. Plaintiff, however, has cited to no evidence in the record showing that he is limited to sedentary work. In addition, the ALJ properly discredited plaintiff's complaints of stress intolerance. As the ALJ did not err in her RFC assessment or in her step four findings, the Court concludes that the ALJ did not err by failing to find plaintiff disabled under Medical-Vocational Rule 201.14.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 3rd day of February, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 14